UNITED STATES FIRE INS. CO. OF NEW YORK v. FIFE et al.   (No. 11933.)

Court of Civil Appeals of Texas.   Fort Worth. March 10, 1928.

Rehearing Denied April 14, 1928.

1. Trial ⟨⟩139(1), 140(1)—Jurors are exclusive judges of credibility of witnesses and weight of evidence.

The jurors are the exclusive judges of the credibility of the witnesses and the weight of the evidence.

2. Insurance ⟨⟩668(3)—Whether company orally contracted to renew fire policy held for jury.

In action on fire policy for destruction of house, whether insurance company had orally contracted to renew policy held for jury.

3. Insurance ⟨⟩145(1)—Insurance company, through duly authorized agent, may contract by parol for renewal of fire policy.

An insurance company, through its duly authorized agent, may contract by parol for the renewal of a fire policy.

4. Insurance ⟨⟩646(1)—In absence of agreement, renewal of fire policy is presumed to be on same terms, conditions, and for same amount as in old policy.

In the absence of an agreement to the contrary, the presumption is that the renewal of a fire policy is on the same terms and conditions and for the same amount as provided in the old policy.

5. Insurance ⟨⟩646(1)—Agents' agreement to renew old fire policy implied as matter of law, in absence of contrary evidence, that renewal would be by old company.

In the absence of evidence to the contrary, insurance company's agents' agreement to renew old fire policy necessarily and as a matter

of law implied that the renewal would be by the same company that had issued the former policy.

**6. Appeal and error ⬅➡1050(1)—In suit on renewed fire policy, overruling objection to allegation of custom of companies to renew in same company and admitting testimony thereon, if error, held harmless.**

In suit on renewed fire policy, overruling objection to allegation of custom of companies doing a fire insurance business to renew policies in same company, and admitting testimony thereon, if error, *held* harmless, where, in absence of contrary showing, law implied renewal in company issuing former policy.

**7. Insurance ⬅➡145(2)—Provisions in fire policy held not expressly to inhibit agents from orally renewing policy.**

Provisions of fire policy relative to officers, agents, or representatives of the company having no power to waive provisions or conditions, except as agreed in policy and provisions relative to renewal, *held* not to be express inhibitions against agents orally renewing policy.

**8. Insurance ⬅➡145(2)—That fire insurance agents were insured's agents for renting property held not such conflict of interests as to preclude insured's recovery on agents' oral contract to renew policy.**

Fact that fire insurance company's agents were insured's agents for renting the insured property *held* not to make agents' interests so conflicting as to preclude insured's recovery on agents' oral contract to renew fire policy.

**9. Insurance ⬅➡145(2)—Agents' contract with insured to renew fire policy held company's contract and not agents' individual contract.**

In action on fire policy orally renewed by insurance company's agents after expiration, renewal contract *held*, in view of policy and circumstances, the contract of the insurance company and not of the agents as individuals.

### On Motion for Rehearing.

**10. Insurance ⬅➡127—Unless property is existent when risk attaches, insurance is not valid.**

It is an elemental principle of law that the property insured must be in existence at the time when the risk attaches, and if at that time, though without the knowledge of either party, the property is not in existence, there is no valid insurance.

**11. Insurance ⬅➡145(1)—Insured, suing on fire policy orally renewed by agents, held not restricted to recovery of smaller amount stated in written policy issued after house burned but not accepted by insured.**

Insured, suing on insurance policy orally renewed by insurance company's agents, *held* not restricted to recovery of smaller amount stated in a written policy issued after insured's house had, unknown to company, burned, where policy was not accepted, and where plaintiff's whole suit was on the orally renewed policy without reference to such subsequent written policy.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Action by T. W. Fife and another against the United States Fire Insurance Company of New York. Judgment for plaintiffs, and defendant appeals. Affirmed.

E. G. Senter, of Dallas, and H. M. Harrington, of Fort Worth, for appellant.

Grindstaff, Zellers & Hutcheson, of Weatherford, for appellees.

DUNKLIN, J. The United States Fire Insurance Company of New York has appealed from a judgment rendered against it in the sum of $2,000 in favor of plaintiff T. W. Fife and T. A. Wythe, executor of the estate of T. C. Hart, deceased.

The cause of action alleged in the plaintiffs' petition was a parol contract of insurance against fire loss on a house situated in the town of Weatherford, owned by plaintiff Fife, and against which plaintiff Wythe, as executor of the estate of Hart, deceased, held a mortgage lien, and by the terms of the judgment Wythe was decreed the sum of $591.28 to satisfy that lien; the balance of the $2,000 being decreed to plaintiff Fife.

The statement of facts shows that C. R. Davis & Son, local agents at Weatherford for the United States Fire Insurance Company of New York, on the 22d day of August, 1925, issued to plaintiff Fife a fire insurance policy upon a dwelling house situated in Weatherford in the sum of $2,000, by the terms of which the building was insured for one year from the 22d day of August, 1925, at noon, to the 22d day of August, 1926, at noon. The record further shows that the house was entirely destroyed by fire on the 29th day of August, 1926, some seven days after the expiration of that policy.

The suit was based on allegations that on or about the 30th day of July, 1926, the defendant entered into a parol agreement with plaintiff Fife to renew the former insurance policy for the full amount of $2,000 and for a period of one year beginning August 22, 1926, and ending August 22, 1927; plaintiff Fife agreeing to pay to the defendant the required and customary premium for that class of insurance. It was further alleged that the defendant also agreed with Fife to issue a renewal policy embodying the same terms and conditions as were contained in the written policy then in force, including what is known as the "vacancy clause"; the renewal policy to bind the defendant to the payment of $2,000 in the event the house should be wholly destroyed by fire during the life of the policy. It was further alleged that the vacancy clause should provide for insurance upon the house during a period of three months' vacancy, the same as in the policy then in force, in consideration for which Fife was to pay an increased premium.

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Among others, the insurance policy which expired August 22, 1926, contained these provisions:

"This policy is made and accepted subject to the foregoing .stipulations and conditions, and to the following stipulations and conditions printed on back hereof, which are hereby specially referred to and made a part of this policy, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached. * * *

"This policy may by renewal be continued under the original stipulations, in consideration of premium for the renewal term, provided that any increase of hazard must be made known to this company at the time of renewal or this policy shall be void." ·

It was further alleged in plaintiffs' petition that there was no increased hazard at the expiration of that policy, save and except the temporary vacancy of the house, which was well known to the defendant's agents at the time they, on behalf of defendant, entered into said parol agreement for renewal, and that notwithstanding such vacancy the risk of fire loss was covered by the vacancy clause.

The case was tried before a jury, who rendered an affirmative finding in answer to the following special issue:

"Issue No. 1. On or about the 30th day of July, 1926, as alleged by plaintiff, and prior to the 22d day of August, 1926, did C. R. Davis & Son, or either of them, as agents or agent of the defendant United States Fire Insurance Company of New York, in consideration of the regular premium to be paid by plaintiff, have an understanding and made an unconditional agreement with plaintiff to renew the certain $2,000 fire insurance policy dated August 22, 1925, being the same that has been introduced in evidence in including what has been referred to and explained as a 'vacancy clause' in this case?"

One of the. defenses specially pleaded by the insurance company was to the effect that prior to August 22, 1926, the defendant's agent, C. R. Davis & Son, notified the plaintiff Fife that his insurance policy would soon expire, and that it was then and there agreed by the agent and Fife that should the latter elect to renew the policy he would so inform the agent; that Fife failed to give any instructions for such a renewal, although the agent by letters more than once called his attention thereto, with the request for information as to his desire in the matter.

That defense was submitted to the jury in special issue No. 2, which, with their finding thereon, is as follows:

"Issue No. 2. Prior to the expiration of said fire insurance policy, which occurred August 22, 1926, was it agreed and understood by and between the plaintiff and defendant's said agents or either of them, in substance, that a renewal of said policy was not to be issued until and unless plaintiff should notify them to issue the same? Answer: No."

The record shows that plaintiff Fife, who owned the property in controversy, lived in the city of Dallas and that he occasionally took trips to Weatherford in order to look after the property. Fife testified that he had employed C. R. Davis & Son to procure renters for his property and to collect the rents therefrom. He further testified that he made the trip to Weatherford on July 30, 1926, and at that time he went to the office of C. R. Davis & Son, where he had a talk with one of the members of the firm, who informed him that the tenant who was then occupying the property was in arrears for his rent. Fife further testified as follows:

"I told him, 'Now Mr. Davis, about that insurance policy. That will soon expire, I don't know just when, but I want you to renew that.' and I says, 'In case he pays his rent, you apply whatever you get out of it on the premium of the policy and give me credit for it, and what more you can send me the bill; but I would rather if you people would get in that rent out of it to keep it up; I would rather do what every one does, but, if not, I have always got money enough to keep up my insurance,' I says. Or if it happened to be vacant ten days, vacated something like ten days, you apply .this ordinary vacancy clause like you formerly did. You carry that thing for as much as three months or longer; the rate will be much cheaper the longer the time. I asked him with regard to three months' time. He said he did not think the rate would be much cheaper for six months than for three months. I told him I was wanting to cut or run down the expenses of the place as much as possible, it was not paying very much. He said all right; he would renew it. He said he would attach the vacancy clause. I just told him to renew it for the full amount, the whole amount, I believe the full amount. That was Friday the 30th of July, 1926. I did not know exactly when my policy was going to expire. I had an idea of the date, from the statement he had sent me, every ordinary vacancy clause he had sent me before that. I had' had a settlement and knew it was some time in June or July those were and presumed it would run out about the time it would, or something near it; I did not know just when it was due. ·

"The next morning, Saturday morning, I went over to the property, and found it was vacant; no one in the place next day. I came back to the office and reported the matter to the office. Mr. Davis was not in, L. E. was not, and his wife was in there; said he had gone out, I don't remember just the words she used, but something in regard to the insurance company, claims or something; I don't recollect just the words, but anyhow it was in regard to his insurance outfit some way or other. After I left there

I went home, I suppose. On the 30th there was no mention in regard to the property being vacant, more than I have already stated. He said he did not know just how long the party would stay there; that he would probably vacate; he would know by, I think, Monday or Tuesday; this fellow had sent a telegram in regard to some money and he was looking for it at that time. That was the 30th of July.

"At the time I had this conversation with L. E. Davis there the property was in the same condition it had been all the time, so far as I know."

[1, 2] Although the testimony of the insurance agents, as well as letters written by them to Fife, was strongly contradictory of Fife's testimony, yet the jurors were the exclusive judges of the credibility of the witnesses and the weight of the evidence. Accordingly, we overrule appellant's assignments of error presenting the contention that the evidence failed to show any definite contract on the part of the defendant to insure the property, in that, as is insisted by appellant, there was an absence of any evidence to show any instruction from Fife to Davis & Son to renew the former policy with the defendant company, or the amount of insurance desired or the date the same was to take effect.

[3, 4] It seems well settled that an insurance company, through its duly authorized agent, may contract by parol for the renewal of a fire insurance policy. And in the absence of an agreement to the contrary the presumption is that the renewal is upon the same terms and conditions and for the same amount as provided in the old policy. Cohen v. Continental Fire Ins. Co., 67 Tex. 325, 3 S. W. 296, 60 Am. Rep. 24; American Cent. Ins. Co. v. Robinson (Tex. Civ. App.) 219 S. W. 277; Republic Ins. Co. v. Poole (Tex. Civ. App.) 257 S. W. 624; Orient Ins. Co. v. Wingfield, 49 Tex. Civ. App. 202, 108 S. W. 788; and other decisions cited in those cases. Also C. J. 109, 110.

[5, 6] Plaintiffs specially pleaded an alleged general custom of companies doing a fire insurance business to renew a policy in the same company which has already insured the property. The defendant addressed an exception to the allegation of such custom, on the ground that the alleged contract of insurance must stand or fall according to its terms, and that the alleged custom could not legally be construed as any part thereof. Assignments of error are presented here to the action of the court in overruling that exception, and also to the admission of testimony to prove such custom. Those assignments are overruled, since, in the absence of evidence to the contrary, the agreement to renew the old policy necessarily and as a matter of law implied that the renewal would be by the same company that had issued the former policy. A policy issued by some other company would be an original and not a renewal policy. Hence

the error, if any, in the rulings noted, was harmless at all events.

[7] Another point made by appellant is that the evidence shows that the partnership firm of C. R. Davis & Son had no authority to enter into the alleged oral contract to renew the policy. In support of that contention it is insisted that the clauses in the policy embodying restrictions in the powers of the agent, copied above, expressly inhibits the agents from exercising such authority. We do not concur in that interpretation, and therefore the contention is overruled.

[8] Another proposition submitted by appellant is in substance that, since C. R. Davis & Son were acting as the agents of Fife in renting the property at the time the alleged contract for the renewal insurance was made, he could not, as agent of the insurance company, consistently with the principles governing the law of agency, bind it by the alleged contract for a renewal of the policy. We believe that the two agencies were entirely consistent with each other and that the mere fact that Davis & Son were the agents of Fife to rent the property and collect the rents herefrom would in no sense conflict with their duties to the insurance company in insuring the property.

[9] From the foregoing conclusions, it follows that there is no merit in appellant's contention that the alleged contract of C. R. Davis & Son was their individual contract and not that of appellant company.

For the reasons stated, all assignments of error are overruled, and the judgment is affirmed.

### On Motion for Rehearing.

[10, 11] The record shows that on the 30th day of August, 1926, which was one day after the house had been destroyed by fire, appellant's local agents, C. R. Davis & Son, at Weatherford, issued a policy of insurance on the house for the sum of $1,500. The record further shows that the agents then wrote a letter to T. W. Fife, at Dallas, notifying him of the issuance of the policy, but Fife refused to accept insurance in that sum, claiming that it should have been for a greater sum. The evidence further shows that when the $1,500 policy was issued by the agents, and, when Fife received a letter from them notifying him of that fact, neither the agents or Fife knew that the house had already been destroyed on August 29th.

In appellant's motion for rehearing, attention is called to the issuance of the $1,500 policy and to the letter addressed to Fife by the agents informing him of that fact; also to the letters written by the agents to Fife inquiring whether or not he desired further insurance after the expiration of the former policy on August 22, 1926. After reciting those and other facts the following is said in the motion for rehearing:

"**Under** these circumstances and in view of the correspondence between the parties, it is submitted that the utmost liability of the company to the plaintiff is fixed by the policy which was actually issued and not the alleged oral contract of insurance."

In the first place, "it is an elemental principle of law that the property insured must be in existence at the time when the risk attaches, and if at that time, although without the knowledge of either party, the property is not in existence, there is no valid insurance." 26 C. J. 40.

In the second place, appellant did not in its pleadings allege the issuance by it of a valid insurance policy for the sum of $1,500 and admit liability thereon; and on the trial of the case appellant introduced correspondence from its agents to Fife, in which it was expressly stated that the $1,500 policy was not issued until after the fire, and that, therefore, Fife had no collectible insurance on the house at all.

In the third place, Fife did not in any of his pleadings seek, in the alternative, a recovery on the $1,500 policy in the event he was not entitled to recover on the alleged oral contract of insurance; his whole case being based upon the alleged oral contract of insurance in the sum of $2,000.

Other grounds stressed in the motion for rehearing consist of formal presentations of the same grounds urged upon original hearing for a reversal of the judgment, and we adhere to our conclusions thereon, already expressed in opinion on original hearing.

Accordingly, the motion for rehearing is overruled.